UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA,

                                 **ORDER**
v.                              20-CR-293-6 (WFK)

HANS DESTINE,

       Defendant.

------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

Hans Destine ("Defendant"), also known as "YL Flocks," moves for bail pending trial. Mot. for Bail ("Def. Mot.") at 1, ECF No. 155. For the reasons discussed below, Defendant's motion for bail is DENIED.

## PROCEDURAL HISTORY

On August 4, 2021, a grand jury returned a twenty-count Superseding Indictment, alleging Defendant, along with ten co-defendants, was a member of the Folk Nation Gangster Disciples, also known as "GD," a gang operating throughout Brooklyn, New York. Superseding Indictment at 1-5, ECF No. 51. According to the Superseding Indictment, GD is an "enterprise" as defined by 18 U.S.C. § 1959(b)(2) that engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1). *Id.* at 3. Those activities include: (a) acts involving murder and robbery that are chargeable under the New York Penal Law and punishable by imprisonment for more than one year; (b) acts indictable under 18 U.S.C. §§ 472 and 473 (relating to counterfeiting), 1951 (relating to interference with commerce, robbery, or extortion) and 1343 (relating to wire fraud); and (c) offenses involving dealing in controlled substances in violation of 21 U.S.C. §§ 841 and 846. *Id.*

1

Counts Ten, Sixteen, Seventeen, and Twenty of the Superseding Indictment charge Defendant with: (1) Conspiracy to Murder Rival Gang Members in violation of 18 U.S.C. § 1959(a)(5); (2) Attempted Murder In-Aid-Of-Racketeering in violation of 18 U.S.C. § 1959(a)(5); (3) Attempted Assault In-Aid-Of Racketeering in violation of 18 U.S.C. § 1959(a)(6); and (4) Possessing, Brandishing, and Discharging a Firearm During a Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)–(iii). The Superseding Indictment contains a criminal forfeiture allegation as to all counts. *Id.* at 9-10, 13-16.

On August 10, 2021, Defendant was arraigned on the Superseding Indictment before the Honorable Magistrate Judge Sanket J. Bulsara and pleaded not guilty to all counts. Magistrate Judge Bulsara ordered Defendant detained on the grounds there were serious risks Defendant would not appear and would endanger the safety of others or the community. Order of Detention, ECF No. 84. Defendant, who has been housed at the Hudson County Jail in New Jersey, was granted leave to reapply for bail at a later time. *Id.*

On February 11, 2022, Defendant filed a letter informing the Court of his concerns about his physical and mental health due to the conditions of his incarceration during the Covid-19 pandemic. Def. Letter, ECF No. 148.

On March 8, 2022, Defendant filed the instant motion for bond. A four-week jury trial in this case is set to commence on October 17, 2022.

## DISCUSSION

### I.     Legal Standard

Under the Bail Reform Act, a court must order pre-trial release of a defendant on a personal recognizance bond if such release will "reasonably assure the appearance of the

[defendant] as required and will not endanger the safety of any other person in the community." 18 U.S.C. § 3142(b). However, if a court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," a court shall order the defendant detained pending trial. 18 U.S.C. § 3142(e)(1). In cases where there is probable cause to believe a defendant has violated 18 U.S.C. § 924(c), there is a statutory presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(B). When a defendant overcomes that presumption, the risk of dangerousness posed by defendants who have committed such crimes "remains a factor to be considered among those weighed by the district court." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).

A district court undertakes a two-step inquiry when evaluating an application for bail. First, the Court must determine whether the Government has established the defendant presents a danger to the community or a risk of flight. *See* 18 U.S.C. § 3142(e). The Government must support a finding of dangerousness by clear and convincing evidence, *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995), and a finding of risk of flight by a preponderance of the evidence, *United States v. Boustani*, 932 F.3d 79, 81 (2d Cir. 2019). Second, if the Government meets its initial burden, the Court must determine whether no conditions or combination of conditions of release could reasonably assure the defendant will not flee or will not endanger others, which the Government must prove by a preponderance of the evidence. *See id.* In making this determination, a court must consider four factors: "(1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and

3

characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

Because the "rules concerning admissibility of evidence in criminal trials do not apply" to bail hearings, *see* 18 U.S.C. § 3142(f)(2)(B), the parties may proceed by way of proffer. *United States v. LaFontaine*, 210 F.3d 125, 130–31 (2d Cir. 2000).

## ANALYSIS

For the reasons set forth on the record and discussed below, the Court finds Defendant poses a danger to the community and a serious flight risk such that no combination of conditions could reasonably assure his appearance in future court proceedings.

### I.  The Government Has Demonstrated Defendant's Dangerousness and Risk of Flight

As required by the Bail Reform Act, the Court considers each of the 18 U.S.C. § 3142(g) factors in turn. In the Court's view, the bail factors support detention rather than release pending trial or other disposition of this case.

#### A. The Nature and Circumstances of the Offense

The Court must first consider the nature and circumstances of the offenses charged, "including whether the offense is a crime of violence" and whether it involves a firearm. 18 U.S.C. § 3142(g)(1). The Bail Reform Act broadly defines a "crime of violence" as:

> (A) an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; [or]
>
> (B) any offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(4).

4

The Indictment charges Defendant with crimes of violence and crimes involving a firearm. Specifically, he is charged with Conspiracy to Murder Rival Gang Members, Attempted Murder In-Aid-Of-Racketeering, Attempted Assault In-Aid-Of Racketeering, and Possessing, Brandishing, and Discharging a Firearm During a Crime of Violence. According to the Government, these alleged crimes relate to Defendant's role as a leader of the No Love City set of the Folk Nation Gangster Disciples ("GD"), a violent street gang. Gov't Opp. at 1, ECF No. 163. Specifically, they relate to his role in a conspiracy to murder rival gang members in November 2020, including his role in a shooting on November 9, 2020. *Id.* at 2.

The Government contends the GD has a practice of committing drive-by shootings with three cars: one that carries shooters and guns and the other two that serve as decoy cars. *Id.* The Government alleges that on November 9, 2020, Defendant, three co-defendants, and another individual set out in a three-car convoy, with Defendant driving the front decoy car, a Toyota registered to his mother. *Id.* at 3. The three co-defendants drove the shooter car, and the other individual drove the second decoy car. *Id.* at 3. The cars then drove together into rival gang territory in Prospect Park South, Brooklyn, where they circled past a group of men twice before stopping. *Id.* at 4. Defendant and the other individual parked around the corner as the two co-defendants exited their vehicle and fired on individuals across the street. The co-defendants ran to the waiting cars and drove off. *Id.* According to the Government, this shooting was part of a series of drive-by shootings that occurred on November 7 and 9, 2020. *Id.* at 2-4.

At the time of Defendant's arrest, three semi-automatic firearms and numerous firearm magazines—including a 34-round magazine loaded in part with hollow point bullets, a fully-loaded 17-round magazine, and four additional magazines—were found in his home. *Id.* at 1. A

5

majority of these firearms and ammunition was found hidden under Defendant's daughter's baby crib. *Id.* at 5.

The allegations against Defendant, including crimes of violence and crimes that "involve[] a . . . firearm," 18 U.S.C. § 3142(g)(1), are extremely serious and thus weigh in favor of detention. *See United States v. Williams*, No. 20-CR-293 (WFK), 2020 WL 4719982, at *2 (E.D.N.Y. Aug. 13, 2020).

Further, if convicted, Defendant faces a mandatory minimum sentence of ten (10) years of incarceration and a maximum sentence of life. Gov't Opp. at 2. The likelihood of a lengthy sentence gives Defendant a strong incentive to flee. *See Williams*, 2020 WL 4719982, at *2 (Guidelines range of 92 to 115 months of incarceration gave Defendant "a strong incentive to flee"). This incentive militates against release pending trial.

### B. The Weight of the Evidence

The weight of the evidence against Defendant is strong. During the November 9, 2020 drive, Defendant was captured on surveillance video stopping at a gas station with a pitchfork tattoo on his right hand, a GD symbol. Gov't Opp. at 3. The charged shooting was also captured on video. *Id.* at 7. The Government also notes that conversations between Defendant and his co-defendants during the course of the November 2020 shootings indicate Defendant was among the gang leaders who ordered the shootings.

### C. The History and Characteristics of Defendant

In assessing Defendant's characteristics, the Court looks to multiple factors, including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, . . . criminal

history," and "whether, at the time of the current offense or arrest, the person was on probation o[r] parole." 18 U.S.C. § 3142(g)(3)(A)–(B).

Defendant was born and raised in Brooklyn, New York, where he has lived for most of life, with the exception of a brief period when he resided in Florida as a child. Def. Mot. at 2. Prior to his arrest, Defendant lived with his mother and younger brother. *Id.* Defendant has a two-year-old daughter with his girlfriend. *Id.* His daughter has special needs, and Defendant assisted with caring for his daughter prior to his arrest. *Id.*

According to Defendant, he has been unemployed since March of 2020 because of the Covid-19 pandemic, though he previously worked as a prep cook. *Id.* at 2-3. Defendant states he has a childhood friend who has offered to hire him as a mover if released. *Id.* at 3.

Defendant suffers from asthma and has a bullet lodged in his right lung. *Id.* at 2. Based on these conditions, Defendant argues he is at an increased risk of complications from Covid-19, which he claims weighs in favor of his release pending trial. *Id.*

However, Defendant is alleged to be a high-level leader in a violent street gang. *See Williams*, 2020 WL 4719982, at *3 (defendant's membership in GD weighed against release). Defendant has also had previous contact with the criminal justice system, having been adjudicated as a Youthful Offender in 2010 for robbery in the third degree. Def. Mot. at 5; Gov't Opp. At 5. Defendant received a five-year term of probation for that offense. *Id.* This history also weighs against Defendant's release.

### D. The Nature and Seriousness of the Danger Posed by Defendant's Release

As previously stated, the alleged conduct at issue is of the utmost seriousness. Although Defendant has proposed strict conditions of release, including 24-hour home detention, electronic monitoring, and six sureties, Courts have consistently held no

7

conditions are sufficient to protect the community in the face of membership in a violent criminal organization. *See United States v. Irizzary*, No. 17-CR-283, 2020 WL 1705424, at *3 (S.D.N.Y. Apr. 8, 2020) (Preska, J.); *United States v. Choudhry*, 941 F. Supp. 2d 347, 359 (E.D.N.Y. 2013) (Kuntz, J.). At the time of his arrest, Defendant also possessed firearms and ammunition—including hollow point bullets, which are "designed to expand upon impact exposing razor-sharp edges at a 90-degree angle to the bullet," *McCarthy v. Sturm, Ruger & Co.*, 916 F. Supp. 366, 368 (S.D.N.Y. 1996) (Baer, J.)—further emphasizing the threat he poses to the community.

In light of the foregoing, the Court concludes the Government has demonstrated by the requisite standards Defendant poses a danger to the community and a serious risk of flight.

## II. The Government Has Demonstrated No Conditions or Combination of Conditions Can Reasonably Assure the Defendant's Appearance in Court and the Safety of the Community

Taking into consideration the above factors, the Court concludes there is no condition or combination of conditions that will reasonably assure the safety of the community and the appearance of Defendant as required. *See* 18 U.S.C. § 3142(e)(1). The Court recognizes it is only a "limited group of offenders who should be denied bail pending trial," *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (internal quotations omitted), but upon consideration of the statutory factors, the Court concludes Defendant is among them.

III. **Defendant Is Not Entitled to Temporary Release Pursuant to 18 U.S.C. § 3142(i).**

A court "may . . . permit the temporary release of [a] person" if the court "determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). However, "[c]ourts have uniformly declined to temporarily release detainees [pursuant to § 3142(i)] in the absence of an imminent trial or hearing." *United States v. Shipp*, No. 19-CR-29 (NGG), 2020 WL 3642856, at *4 (E.D.N.Y. July 6, 2020) (Garaufis, J.). Trial in this case is set to commence on October 17, 2022, more than four months away. The Court thus denies Defendant's request for temporary release.

## CONCLUSION

For the foregoing reasons, the Court concludes the Government has demonstrated by the requisite standards Defendant poses a danger to the community and is a flight risk, and no combination of conditions can reasonably assure Defendant's presence at future court proceedings. This is particularly so in light of the statutory presumption in this case. Accordingly, Defendant's motion for bond is DENIED.

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 15, 2022
Brooklyn, New York

9