UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,        :
        :
      v.        :    **MEMORANDUM & ORDER**
        :    20-CR-293 (WFK)
HANS DESTINE,        :
        :
        Defendant.        :
------------------------------------------------------------X

On September 19, 2022, Defendant entered a plea of guilty to two counts of a 20-count Superseding Indictment:  Count 10, conspiracy to murder rival gang members in violation of New York Penal Law ("NYPL") §§ 125.25(1) and 105.15 and 18 U.S.C. §§ 1959(a)(5) and 2; and Count 16, attempted murder in-aid-of racketeering, in violation of NYPL §§ 125.25(1), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(5) and 2.  Pursuant to his plea agreement, Defendant also stipulated and admitted the offenses contained in Counts 11, 12, 13, 14, 16, 17, 18, and 19 were all objects of the conspiracy charged in Count 10.  Counts 11, 13, and 18 all charge attempted murder in-aid-of racketeering, in violation of NYPL §§ 125.25(1), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(5) and 2; Counts 12 and 17 charge attempted assault in-aid-of racketeering in violation of NYPL §§ 120.05(2), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(6) and 2; and Counts 14 and 19 charge assault in-aid-of racketeering in violation of NYPL §§ 120.05(2) and 20.00 and 18 U.S.C. § 1959(a)(3) and 2.  Defendant stipulated to including these counts in his Guidelines calculations.  The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a).  For the reasons discussed below, Defendant is hereby sentenced to 240 months of imprisonment, to be followed by two years of supervised release with special conditions.  Defendant is required to pay a mandatory special assessment of $200.00.  Finally, forfeiture is ordered in accordance with the terms set forth in the Order of Forfeiture.

## I.  Background

The Federal Bureau of Investigation ("FBI") and the New York City Police Department ("NYPD") led the investigation into Defendant and other gang members for the instant offense. Presentence Investigation Report ("PSR") ¶ 6, ECF No. 690.  Defendant was a leader of the No Love City ("NLC") set, or neighborhood-based subgroup, of Folk Nation Gangster Disciples ("GD"), a violent street gang operating out of Brooklyn, New York.  *Id.*  ¶¶ 6-7.  Central to GD's

tenets is the use of violence to retaliate against perceived slights to the gang or to enhance the status of members within the gang. *Id.* ¶ 6.

In November of 2020, Defendant, along with others, was involved in four shootings targeting rival gang members. *Id.* ¶ 8. While Defendant conspired to commit the first two shootings, he was not a direct participant. Second PSR Addendum at 1, ECF No. 729. These first two shootings, both of which were carefully orchestrated drive-by shootings, took place in Canarsie, Brooklyn on November 7, 2020. PSR ¶ 16. GD arranged to have three cars participate in the shooting: one to carry the shooters, and two to act as decoys. *Id.* ¶ 17. Decoys were employed to slow down the police or draw their attention away from the shooters in the event police interfered. *Id.* The cars drove from Flatbush, Brooklyn, which is NLC territory, to Canarsie, Brooklyn, which is rival gang territory. *Id.* Upon arrival in Canarsie, the convoy drove past a crowd of people and the occupants of the shooter car opened fire. *Id.* No one was injured in this shooting. *Id.* Later that same day, the convoy returned to Canarsie and again opened fire into a crowd of people, non-fatally wounding two of those people. *Id.* ¶ 18.

The Government highlights significant evidence pertaining to Defendant's involvement in these shootings, including text messages to co-defendants Thompson and Agoro discussing the shootings themselves, Citizens App coverage of the shootings, and a surveillance video of the second shooting. Government Sentencing Memorandum ("Gov't Mem.") at 2, ECF No. 721 (citing trial evidence). Indeed, Defendant remarked regarding the surveillance video: "'[i]ts [sic] called art of war' and '[g]otta have a[n] eye on the opps,' i.e., rival gang members, '[a]t all times.'" *Id.* (citing trial evidence). During the evening of November 8, 2020, Defendant messaged co-defendant Agoro and, using gang slang, ordered co-defendant Agoro to recruit two people for a shooting. *See id.*; *see also* PSR ¶ 20.

2

The second two shootings took place on November 9, 2020.  PSR ¶¶ 21-24.  That day, Defendant and others set out in another three-car convoy comprised of a shooter car and two decoys.  *Id.* ¶ 21.  In this shooting, Defendant drove the front decoy car.  *Id.*  The convoy drove to rival gang territory in Prospect Park South, Brooklyn, and circled a group of men twice before stopping.  *Id.* ¶ 23.  Two co-defendants exited the shooter car and opened fire at the group.  *Id.*  No one was injured in this shooting.  *Id.*  Defendant asserts—and the Government does not posit otherwise—he did not directly participate in the second November 9, 2020 shooting. Defendant's PSR Objections at 2, ECF No. 712; *see also* Gov't Mem. at 2-3 (not mentioning Defendant in discussion of the second November 9 shooting); Second PSR Addendum at 1 (noting Defendant's objection and explaining it takes no position on including this information in the PSR).  That second November 9, 2020 shooting took place in Brownsville, Brooklyn, where a two-car convoy of other GD members and associates shot into a crowd of people, striking one woman.  PSR ¶ 24.

On August 10, 2021, Defendant was arrested in his home by FBI agents, where a search uncovered three handguns, six magazines, and a total of more than 200 rounds of ammunition. *Id.* ¶ 39.  The Government notes "most of the firearms and ammunition were hidden under his daughter's crib."  Gov't Mem. at 3.

On August 4, 2021, a grand jury returned a twenty-count Superseding Indictment, which alleges Defendant, along with ten co-defendants, was a member of the Folk Nation Gangster Disciples, also known as "GD," a gang operating throughout Brooklyn, New York.  ECF No. 51 ¶¶ 1, 8.  According to the Superseding Indictment, GD is an "enterprise" as defined by 18 U.S.C. § 1959(b)(2) that engaged in racketeering activity as defined in 18 U.S.C. §§ 1959(b)(l) and 1961(1).  *Id.* ¶¶ 4-5.

3

Defendant was charged with four counts in the Superseding Indictment: Count 10 charges Defendant with conspiracy to murder rival gang members, in violation of NYPL §§ 125.25(1) and 105.15 and 18 U.S.C. §§ 1959(a)(5) and 2; Count 16 charges Defendant with attempted murder in-aid-of racketeering, in violation of NYPL §§ 125.25(1), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(5) and 2; Count 17 charges Defendant with attempted assault in-aid-of racketeering, in violation of NYPL §§ 120.05(2), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(6) and 2; and Count 20 charges Defendant with possessing, brandishing, and discharging a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(l)(A)(i), 924(c)(l)(A)(ii), 924(c)(1)(A)(iii). *Id.* ¶¶ 25, 36, 38, 43. The Superseding Indictment also contains a criminal forfeiture allegation as to all counts. *Id.* ¶¶ 44-45.

On September 19, 2022, Defendant entered a plea of guilty to two counts of the Superseding Indictment: Count 10, charging him with conspiracy to murder rival gang members, and Count 16, attempted murder in-aid-of racketeering. ECF No. 349. Pursuant to that plea agreement, Defendant also stipulated and admitted the offenses contained in Counts 11, 12, 13, 14, 16, 17, 18, and 19 were all objects of the conspiracy charged in Count 10. *Id.* ¶ 2; *see also* PSR ¶ 4. Defendant stipulated to including these counts in his United States Sentencing Guidelines ("U.S.S.G.") calculations as part of his plea agreement. *See* ECF No. 349 ¶ 3. Also as part of his plea agreement, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposes a term of imprisonment of 240 months or below. *Id.* ¶ 5.

## II. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court

4

chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in

open court the reasons for its imposition of the particular sentence, and . . . the specific reason for

the imposition of a sentence different from that described" in the Guidelines.  18 U.S.C. §

3553(c)(2).  The court must also "state[] with specificity" its reasons for so departing "in a

statement of reasons form."  *Id.*

    "The sentencing court's written statement of reasons shall be a simple, fact-specific

statement explaining why the guidelines range did not account for a specific factor or factors

under § 3553(a)."  *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y.

Mar. 29, 2010) (Weinstein, J.).  Section 3553(a) provides a set of seven factors for the Court to

consider in determining what sentence to impose on a criminal defendant.  The Court addresses

each in turn.

### III. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

    The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of

the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).

1. Family and Personal Background

    Defendant was born on June 15, 1991 in New York City to the marital union of Rancois

and Yanick (née Icart) Destine.  PSR ¶ 97; First PSR Addendum at 2, ECF No. 709.

Defendant's parents separated and his father moved to Florida when Defendant was young.  First

PSR Addendum at 2.  Defendant remained in Brooklyn with his mother following his parents'

separation, and reported a childhood free from neglect, despite financial hardships.  *Id.*

Defendant moved to Miami to live with his father after his first year of high school.  *Id.* at 3.  In

both Brooklyn and Miami, Defendant reported witnessing gun violence.  *Id.* at 2-3.  Defendant is

5

close with his mother—speaking near-daily—and is in some contact with his father. *Id.*
Defendant's parents are aware of the instant offense and remain supportive. *Id.* at 2. Defendant
is close with his one full sibling, who is aware of the instant offense and remains supportive. *Id.*
Defendant has two paternal half-siblings, but does not report a close relationship with either. *Id.*

Defendant has never married, but has been in a relationship since approximately 2018.
*Id.* at 3. Defendant's partner is aware of the instant offense and remains supportive. *Id.*
Defendant and his partner have a five-year-old daughter, who was diagnosed with autism after
Defendant's arrest in this case. *Id.* Defendant's daughter is nonverbal, and Defendant's partner
is the primary caregiver for Defendant's daughter. *Id.*

### 2.    Educational and Employment History

Defendant attended James Madison High School in Brooklyn, New York for ninth grade.
*Id.* at 5. While living in Florida with his father, he attended North Miami Beach High School for
tenth grade. *Id.* Defendant received his GED in 2013. *Id.*

Defendant reported holding a number of jobs prior to his arrest. Specifically, Defendant
reported working as an intern for a law firm; a UPS package handler; a door-to-door salesperson;
and a worker in the construction/demolition field. *Id.* From 2018 through March 2020,
Defendant worked for a restaurant in Manhattan, beginning as a porter/dishwasher and working
his way up to food prep assistant. *Id.*; *see also* Defense Counsel's Sentencing Memorandum
("Def. Mem.") at 5, ECF No. 719. Defendant reported he was planning to attend culinary classes
prior to the onset of the Covid-19 pandemic. *Id.* The pandemic shut down the restaurant at
which Defendant was working, and Defendant lost his job. *Id.* Defendant received
unemployment benefits thereafter. First PSR Addendum at 5.

### 3.    Prior Convictions

Defendant has one prior conviction for Robbery in the Third Degree.  PSR ¶ 89.  Defense counsel notes Defendant "was adjudicated a 'Youthful Offender' pursuant to New York Criminal Procedure Law Section 720.20" and this conviction was vacated.  Defendant's PSR Objections at 2.

### 4.    Physical and Mental Health

Defendant suffers from asthma.  PSR ¶ 102; First PSR Addendum at 4.  Defendant has been shot twice:  once in 2010, resulting in a bullet being permanently lodged in his right lung, and once following 2010, when Defendant was shot in the leg.  First PSR Addendum at 4; *see also* Def. Mem. at 4.  Defendant still feels residual pain from his first shooting.  *Id.*

Defendant was diagnosed with ADHD as a child, but has not received treatment or medication for this condition since high school.  First PSR Addendum at 4.

### 5.    Substance Abuse

Defendant has a history of using marijuana, Percocet, and prescription cough syrup mixed with alcohol.  *Id.*  Defendant has not used marijuana since his arrest for the instant offense.  *Id.*  Defendant began using Percocet about three to four times a week after he was shot for the second time.  *Id.*  Defendant began using prescription cough syrup mixed with alcohol following his first shooting, and reported daily consumption of this mixture prior to his arrest. *Id.* at 4-5.  Defendant's drug usage reportedly increased after he lost his job in 2020.  *Id.* at 5; *see also id.* at 1; Def. Mem. at 5.  While Defendant has not received drug treatment in the past, he expressed interest in receiving such treatment if given the option.  First PSR Addendum at 5.

6.      Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B.  The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offenses:  conspiring to murder rival gang members, the objects of which included four drive-by shootings—during one of which Defendant drove a decoy car—resulting in injuries to three individuals. *See supra* Part I. While Defendant and other members of GD were purportedly targeting rival gang members, they opened fire into crowds of people, shooting indiscriminately. *Id.* Indeed, not only was Defendant a member of GD, but he was an NLC leader who directed others to engage in and recruit for these shootings. *Id.* The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

**C.  The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant.  18 U.S.C. § 3553(a)(3).

Defendant pled guilty to two counts of the Superseding Indictment:  Count 10, charging him with conspiracy to murder rival gang members in violation of NYPL §§ 125.25(1) and

105.15 and 18 U.S.C. §§ 1959(a)(5) and 2; and Count 16, charging him with attempted murder

in-aid-of racketeering in violation of NYPL §§ 125.25(1), 110.00, and 2 and 18 U.S.C. §§

1959(a)(5) and 2.  ECF No. 349; *see also* ECF No. 51.  Pursuant to his plea agreement,

Defendant also stipulated and admitted that the offenses contained in Counts 11, 12, 13, 14, 16,

17, 18, and 19 of the Superseding Indictment were all objects of the conspiracy charged in Count

10.  ECF No. 349 ¶ 2.  Counts 11, 13, and 18 all charge attempted murder in-aid-of racketeering,

in violation of NYPL §§ 125.25(1), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(5) and 2;

Counts 12 and 17 charge attempted assault in-aid-of racketeering, in violation of NYPL §§

120.05(2), 110.00, and 20.00 and 18 U.S.C. §§ 1959(a)(6) and 2; and Counts 14 and 19 charge

assault in-aid-of racketeering, in violation of NYPL §§ 120.05(2) and 20.00 and 18 U.S.C. §§

1959(a)(3) and 2.  ECF No. 51.  The parties agreed, for sentencing purposes, this conduct would

be utilized in calculating Defendant's Guidelines.  *See* ECF No. 349 ¶ 3; *see also* PSR ¶ 44;

U.S.S.G. §1B1.2(d) ("A conviction on a count charging a conspiracy to commit more than one

offense shall be treated as if the defendant had been convicted on a separate count of conspiracy

for each offense that the defendant conspired to commit.").

On each of Counts 10 and 16, Defendant faces a statutory maximum term of

imprisonment of 10 years, which is to say 120 months, pursuant to 18 U.S.C. § 1959(a)(5).

Defendant also faces a term of supervised release of not more than three years.  18 U.S.C. §

3583(b)(2).  If a condition of release is violated, Defendant may be sentenced to up to two years

of imprisonment without credit for pre-release imprisonment or time previously served on post-

release supervision.  18 U.S.C. § 3583(e).  Pursuant to 18 U.S.C. § 3561(c)(1), Defendant is

eligible for a term of probation of not less than one nor more than five years on Counts 10 and 16

because both offenses are Class C felonies.  If a term of probation is imposed, a fine, restitution,

or community service must be imposed, unless extraordinary circumstances exist.  18 U.S.C. § 3563(a)(2).

In addition to facing terms of imprisonment, probation, and supervised release, Defendant faces numerous other penalties.  On each of Counts 10 and 16, Defendant faces a maximum fine of $250,000.00 on pursuant to 18 U.S.C. § 3571(b).  However, Defendant's financial profile indicates he is unable to pay a fine.  PSR ¶ 109.  As outlined in the Preliminary Order of Forfeiture, Defendant also faces forfeiture of:  (i) one 9mm Luger caliber Taurus model G3 semi-automatic pistol bearing serial number ABJ936693 and ammunition contained therein; (ii) one 380 Auto caliber Ruger model LCP semi-automatic pistol bearing serial number 372364035, and ammunition contained therein; and (iii) one 9mm Luger caliber Glock model 43 semi-automatic pistol bearing serial number BDFC875, and ammunition contained therein, pursuant to 18 U.S.C. § 924(d)(1), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c).  Preliminary Order of Forfeiture, ECF No. 516.

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A.  However, the amount of restitution is not determinable yet as the Court is still awaiting responses from Defendant's victims and his victims' families.  PSR ¶ 123.  Per guidance from *United States v. Catoggio*, 326 F.3d 323 (2d Cir. 2003), restitution should not be ordered when losses incurred by the victim are not identified.  The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

The applicable guideline for Counts 10 and 16, each charging violations of 18 U.S.C. § 1959(a)(5), is U.S.S.G. §2E1.3(a)(2), which directs that the base offense level is the offense level applicable to the underlying crime or racketeering activity, since it is greater than level 12. As the underlying crime for each count is attempted murder, the applicable guideline for each count is U.S.S.G §2A2.1(a)(1), which provides for a base offense level of 33. A four-level enhancement is warranted for each count because Defendant was an organizer or leader of criminal activity which involved at least five participants "or was otherwise extensive," U.S.S.G. §3B1.1(a), bringing the adjusted offense level for Counts 10 and 16 to 37. PSR ¶¶ 42, 43. All parties agree with this calculation. *Id.*; Gov't Mem. at 3-4; Def. Mem. at 2.

Per U.S.S.G. §1B1.2(d), the stipulated offenses under Counts 11, 12, 13, 14, 17, 18, and 19 are considered in Defendant's Guidelines calculations "as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." *See also* PSR ¶ 44; ECF No. 349 ¶ 3. The applicable Guideline for each of the stipulated offenses (Counts 11, 12, 13, 14, 17, 18, and 19) is U.S.S.G. §2E1.3(a)(2), which directs that the base offense level is the offense level applicable to the underlying crime or racketeering activity, since it is greater than level 12. As the underlying crime for each stipulated count is attempted murder, the applicable guideline for each stipulated count is U.S.S.G. §2A2.1(a)(1), which provides for a base offense level of 33. A four-level enhancement is warranted for each stipulated count because Defendant "was an organizer or leader in criminal activity which involved at least five participants or was otherwise extensive," U.S.S.G. §3B1.1(a), bringing the adjusted offense level

for each stipulated count to 37.  PSR ¶¶ 45-51.  All parties agree with this calculation.  *Id.*; Gov't Mem. at 3-4; Def. Mem. at 2.

Pursuant to the Multiple Count Analysis laid out in U.S.S.G. § 3D1.4, the combined offense level is determined by taking the highest offense level of the group and increasing that by a certain number based on how many "units" exist across counts.  In this instance, application of the grouping rules under U.S.S.G. §3D1.2(c) yields four groups:  Group 1 – Count 10 and stipulated Counts 11 and 12; Group 2 – Stipulated Counts 13 and 14; Group 3 – Count 16 and Stipulated Count 17; and Group 4 – Stipulated Counts 18 and 19.  *See* PSR ¶ 80.  Per U.S.S.G. §3D1.3, because each group has an adjusted offense level of 37, four levels are added to the total adjusted offense level pursuant to U.S.S.G. §3D1.4.  All parties agree with this calculation.  PSR ¶¶ 80, 82; Gov't Mem. at 4; Def. Mem. at 2.

Defendant's timely acceptance of responsibility results in a three-point reduction pursuant to U.S.S.G. §3E1.1.

Altogether, Defendant has a total adjusted offense level of 38.  All parties agree with this calculation.  The Court adopts this calculation.

All parties agree Defendant has a criminal history category of I.  PSR ¶ 92; Second PSR Addendum at 2; Gov't Mem. at 4; Def. Mem. at 2-3.  Defense counsel and Probation both specifically note the Defendant has a criminal history score of zero.  Def. Mem. at 2-3; Second PSR Addendum at 2; *see also* Defendant's PSR Objections at 2.[1]

Probation contends an upward departure may be warranted pursuant to Application Note 2 in the Commentary to U.S.S.G. §2A2.1 because Defendant's actions created a substantial risk

---

[1] The PSR lists Defendant has having a criminal history score of one, to which the Government made no objection or comment.  *See* Gov't Mem. at 4.  This has since been amended by the Second PSR Addendum.  Second PSR Addendum at 2.  However, a criminal history score of one and zero both yield a criminal history category of I, so this difference does not affect Defendant's Guidelines calculations.

of death or serious injury to more than one person. PSR ¶ 126. In Defendant's *pro se* motion to

the Court, he contends the Court can consider the "harsh conditions of the defendant's pre-trial

confinement" at the Hudson County Correctional Center as grounds for a downward departure.

ECF No. 578 at 1.

All parties agree a total adjusted offense level of 38, combined with a criminal history

category of I, results in an effective recommended Guidelines range of imprisonment of 235 to

240 months. PSR ¶ 111; Gov't Mem. at 4-5; Def. Mem. at 3; *see generally* U.S.S.G.

§5G1.1(c)(1). The Court adopts this calculation.

Probation recommends the Court impose a below-Guidelines sentence of 234 months of

imprisonment—117 months on each of Counts 10 and 16, to run consecutively, followed by two

years of supervised release with special conditions. Probation Recommendation at 1, ECF No.

690-1 at 1. This is in addition to the mandatory $200.00 special assessment. *Id.* Probation

argues this sentence is sufficient but not greater than necessary to comply with the § 3553(a)

factors, specifically noting the personal characteristics of this Defendant, the nature of the

offense, and Defendant's criminal record. *Id.* at 2.

Defense counsel requests the Court impose a non-Guidelines sentence, specifically

requesting Defendant's sentence run concurrently. *See* Def. Mem. at 1, 3, 7. At sentencing,

defense counsel requested a 120-month concurrent sentence. Defense counsel requests a

concurrent sentence because, while Counts 10 and 16 have different elements, they "arise out of

the same conduct and transactions" specifically Defendant's "activities in furtherance of the

conspiracy and the enterprise." *Id.* at 3; *see also id.* ("Factually these are the same events."). As

such, in defense counsel's eyes, "[c]onsecutive sentences in the instant matter may seem contrary

13

to the spirit of *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)] because the conduct was factually the same" and "consecutive sentences in effect rises [sic] above the statutory maximum." *Id.*

Defense counsel argues the § 3553(a) factors warrant the requested sentence. *See id.* at 7. With regards to both specific and general deterrence, defense counsel explains Defendant's "actions warrant serious punishment," noting Defendant's understanding of "the outright atrociousness of his conduct and thus his acceptance of responsibility" goes to the goal of specific deterrence, while general deterrence portends "serious punishment as a message to others who would consider engaging in similar conduct." *Id.* at 4. Indeed, defense counsel asserts Defendant is "prepared to accept the punishment which the Court will mete out," *id.* and points out Defendant was the third defendant to plead guilty in this case, *id.* at 2; *see also id.* at 6. Defense counsel points to Defendant's minimal criminal history and his past encounters with violent crime—including being shot twice and witnessing violence during his childhood—as warranting consideration in sentencing. *Id.* at 4-5. Specifically, defense counsel notes, the second time Defendant was "the victim of a random act of violence," Defendant and the people he was with "were simply driving down the street and got caught in the crossfire," and "the psychological effects" of that incident remain. *Id.* at 4. Defense counsel further maintains the Covid-19 pandemic derailed Defendant's attempts at living a life off the street and away from gang members: after he was fired from his restaurant job, he made "the terrible decision to involve himself with his codefendants," which was exacerbated by "his use of marijuana, alcohol, and Percocet" to mitigate residual lung pain from a prior shooting. *Id.* at 5. Since being incarcerated for the instant offenses, Defendant has taken more than 40 educational and professional courses. *Id.* at 6; *see also* Ex. A to Def. Mem., ECF No. 719-1.

14

Defense counsel particularly emphasizes the "extraordinary circumstances" pertaining to Defendant's five-year-old daughter. Def. Mem. at 5. Defendant's daughter was diagnosed with autism, is both non-verbal and hyperactive, and "cannot be left alone and needs constant attention." *Id* at 5-6. Defendant's partner, while receiving some assistance from Defendant's mother, "cannot work full time," "constantly needs to be with her daughter," and cannot afford to hire someone to help her with her daughter's condition or place her daughter in a specialized program. *Id.* at 6. Defense counsel notes Defendant has been unable to see his partner or daughter since his incarceration, writing "[t]hey have no means to travel to Hudson County" and "[t]he child is sometimes difficult to control," making custodial visits difficult. *Id.*

This Court has read and considered the letters written by Defendant's loved ones and family. *See* Supplemental Defense Exhibits, ECF No. 725-1; Supplemental Letter of Support, ECF No. 731-1. These letters describe Defendant as a loving and caring partner and brother, a deeply dedicated father, and an overall good person. *Id.* The letters implore the Court to give Defendant another chance. *Id.* The Court appreciates what Defendant's advocates have said on his behalf.

The Government recommends the Court impose a sentence within the effective Guidelines range of 235 to 240 months of imprisonment. Gov't Mem. at 5-6. The Government argues such a sentence is warranted because Defendant "is particularly culpable as a leader of the gang who directly encouraged and ordered violence" and "possessed numerous firearms and high-capacity firearms, indicating an intention to continue to engage in serious violence." *Id.* at 5. The Government contends sentencing him within the effective Guidelines range would serve to dissuade him and other individuals from engaging in similar acts and would combat the "glorification of violence" which has been a "detriment [to] the broader community." *Id.* at 5.

15

The Government further argues Defendant's history and characteristics warrant a Guidelines sentence. *Id.* at 5. The Government notes "millions of people across the country" faced economic hardships due to Covid-19, "and virtually none of them turned to crime, let alone [sic] the dangerously violent crime engaged in by the defendant." *Id.* Indeed, the Government asserts Defendant's "conscious choice to become a leader in the gang and to push others to commit murders for the gang" "is not excused or mitigated by any economic circumstances." *Id.* at 5-6.

The Government acknowledges the "heartbreaking" circumstances facing Defendant's daughter and partner. *Id.* at 6. However, the Government argues Defendant "chose to put them in this situation" by choosing to join and become a leader of a gang, engage in violence, and "turn his daughter's crib into an arsenal of illegal firearms." *Id.* "Having made all these choices to his family's detriment," the Government contends, "he cannot now point to the harm he has caused them as an argument to mitigate his sentence." *Id.* The Government notes while Defendant's conduct "might otherwise warrant an upward departure" under the Guidelines, "a Guidelines sentence without a departure appropriately balances any mitigating factors against these aggravating factors." *Id.*

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not drawn the Court's attention to any applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

16

**F. The Need to Avoid Unwarranted Sentence Disparities**

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Court considers the Government's argument that a Guidelines sentence would "avoid unwarranted sentencing disparities with others convicted of similar conduct." Gov't Mem. at 5. The Government cites FY 2019-2023 United States Sentencing Commission data showing individuals with comparable offense levels and criminal history categories to Defendant whose applicable Guideline is U.S.S.G. §2A2.1 received an average sentence of 230 months' incarceration and a median sentence of 240 months' incarceration. *Id.* (citing Judiciary Sentencing Information, United States Sentencing Commission, https://jsin.ussc.gov). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

**G. The Need to Provide Restitution**

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). As explained previously, restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. However, the amount of restitution is not determinable yet as the Court is still awaiting responses from Defendant's victims and his victims' families. PSR ¶ 123. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within 90 days after this sentencing to determine the specific amounts owed to Defendant's victims.

**IV. CONCLUSION**

For the reasons set forth above, the Court determines a sentence of 240 months of imprisonment to be followed by two years of supervised release with the standard conditions and special conditions, forfeiture in accordance with the Preliminary Order of Forfeiture, which the Court makes final today and by its terms becomes final as of this sentencing, and a $200.00 mandatory special assessment is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court does not impose a fine because Defendant appears unable to pay a fine.

The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 690, and the addenda thereto, ECF Nos. 709 and 729, to the extent those findings are not inconsistent with this opinion and imposes the special conditions of release proposed by the Probation Department.



SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 4, 2024
          Brooklyn, New York

18